Nolan *v.* Bank of New York National Banking Association.

———— •••• ————

## LOUISE J. NOLAN *vs.* THE BANK OF NEW YORK NATIONAL BANKING ASSOCIATION.

A check, dated Jan. 21, 1865, was drawn by M. & Sons, payable to their own order, upon the defendant, and indorsed by the drawers.   It was, on or about that date, accepted by the drawee, certified to be " good," and registered.  On the 4th of February, 1865, the check while in the hands of M. & G., was stolen from their book-keeper.   Notice of the theft was given to the bank, or payment of it stopped, on the same day.   In May or June, 1865, the plaintiff became the owner and holder of the check, paying value for it, and taking it in a legitimate manner, as an investment, after making all the inquiries which it was incumbent upon her to make.

*Held*, 1. That if the signatures to the check and certificate were genuine, the plaintiff was not bound, by anything appearing upon the face of it, to exercise any other caution, vigilance or diligence, so far. as the bank was concerned.

2. That the check was not to be deemed dishonored, like a promissory note payable on demand, from the delay in presenting it for payment, but on the contrary, was paid by the drawers, by an absolute appropriation of their funds to meet it, which the bank held for the transferee, whoever he might be.

3. That the certificate was to be regarded as an acceptance, payable on demand, and was obligatory until paid, or the statute of limitations should attach as a bar.

4. That the court below erred in deciding that the plaintiff was not entitled to recover upon the check, against the bank because the same was, in judgment of law, dishonored.

5. That the check having been stolen, it became the duty of the plaintiff to establish that she was a *bona fide* holder for value; and that the refusal of the judge to submit that question to the jury, on the ground that the check was overdue and taken subject to existing equities, was error.

The question of equities between any of the prior parties to a certified check cannot intervene against a *bona fide* holder for value.   He deals upon the paper alone, looking to the bank as the primary debtor.

THIS action was brought to recover the amount of a check for $5,000, dated New York, January 21, 1865, payable in gold, drawn by Morgan & Sons, on the Bank of New York, payable to their own order, and which was accepted by the bank and certified to be good, and so put in circulation. The bank afterwards reorganized as a national bank under the name as above entitled; and the new association continued the business and assumed the liabilities of the old corporation, the Bank of New York. This check, it was claimed, was not intended either by the drawers or the drawee to be immediately paid, as it was accepted by the drawee and certified to be good, and so went out into the world.

At that time, and long afterwards, such checks drawn on that bank, payable in gold, and registered as this was, were circulated and used by the mercantile community as gold, and were thus kept in circulation a long time. In May, 1868, the plaintiff in this case, living at New Orleans, and having money to invest, in perfect good faith, and after making inquiry as to the genuineness and value of the check, and exhibiting it, or causing it to be exhibited to bankers and correspondents of the drawers and others, purchased it, giving full value for it. It was soon afterwards presented to the bank (the defendant) for payment, and payment was refused; and in this action the defence was that on or about the 4th of February, 1865, while the firm of Myer & Greve were owners of the check, it was lost by or stolen from a clerk of theirs. And that afterwards Myer & Greve having indemnified the bank, the bank paid the amount to them, and defend this suit for their benefit.

At the trial the court directed a verdict for the defendant, and ordered the exceptions to be heard in the first instance at the General Term.

The plaintiff appealed from the judgment, and upon a case and exceptions moved for a new trial.

*B. K. Phelps*, for the appellant. I. The court having directed a verdict in favor of the defendant, all presumptions and all disputed questions of fact, must, on this hearing, be held in favor of the plaintiff, and the case, on this application for a new trial, must be considered, wherever there is a dispute, as if the facts were as shown by the plaintiff's evidence only. *Ward* v. *C. P. N. & E. R. R. Co.*, 42 *How.*, 291. *Cook* v. *N. Y. C. R. R. Co.*, 3 *Keyes' Rep.*, 476. *Wells* v. *Mann*, 45 *N. Y. Rep.*, 331. *Stone* v. *Fowler*, 47 *N. Y. Rep.*, 566.

II. The check was negotiable, and, according to the evidence, the plaintiff purchased it in good faith, and gave full value for. There was nothing to arouse her suspicions. It was openly offered for sale, the owner refusing to sell it for less than its face. The plaintiff was not bound, before purchasing it, to make any inquiry at all, yet, for the purpose of ascertaining its genuineness and value, she caused it to be exhibited to merchants, bankers, and correspondents of the drawers, before she purchased it, who reported it to be good. If such persons pronounced it good, and knew nothing of its having been lost or stolen, why should she have suspicion. Such being the evidence, the plaintiff was a *bona fide* purchaser and owner, in good faith ; and being such *bona fide* purchaser and owner, the fact that it had been lost by, or stolen from, a former owner, was no defence. *Welsh* v. *Sage*, 47 *N. Y. Rep.*, 143. *Magee* v. *Badger*, 34 *id.*, 248. *Belmont Branch Bank* v. *Hoge*, 35 *id.*, 65. *Turnbull* v. *Bowyer*, 40 *id.*, 456. *Birdsall* v. *Russell*, 29 *id.*, 220. *Goodman* v. *Simonds*, 20 *How. U. S.*, 343. *Seybell* v. *National Currency Bank*, 4 *Abbott, N.S.*, 352. *Murray* v. *Lardner*, 2 *Wallace*, 110. *Miller* v. *Austen*, 13 *How. U. S.*, 218. *Farmers' & Mech. Bank* v. *Butch. & Drov. Bank*, 16 *N. Y.*, 128. *Mead* v. *Merchants' Bank of Albany*, 25 *id.*, 143.

III. On the trial the plaintiffs' counsel offered to show

Nolan *v.* Bank of New York National Banking Association.

that by the custom of the mercantile community in 1865, 1866, and 1867, such checks on this bank circulated, and were received, transferred, and accepted as gold, and that they were so kept in circulation a long time without being presented for payment. But the court held it irrelevant and incompetent, and excluded the evidence. In this the court erred.

IV. The plaintiff testified that before she bought the check she had possession of it for an hour or two ; took it to Mr. Fleming's office, and gave it to him, with instructions to go to the different banks and inquire the worth and value of the check; that Mr. Fleming went out with it, and then sent his book-keeper, Mr. Crane, out with it. Then plaintiff's counsel offered to show what Mr. Fleming and Mr. Crane reported to her as the result of their inquiries, and the defendants' counsel objected, without stating any grounds of the objection, and the objection was sustained. That was error. 1. As no grounds of the objection were stated, it was error to sustain it, if the evidence or fact sought to be proved was material or proper for any purpose. (45 *N. Y. Rep.*, 753. 12 *id.*, 442, 451. 7 *Bosworth*, 481.) 2. If there was anything about the paper casting suspicion upon it, and if that was material for the defence in the case, it was proper for the plaintiff to repel it, by proving anything said by anybody which did or would naturally have a tendency to remove that suspicion from her mind. It would have been material for the purpose of showing that she was acting honestly and in good faith, which is all that the law requires of a purchaser in such a case. (47 *N. Y. Rep.*, 143. 34 *id.*, 248. 4 *Abbott*, *N.S.*, 352.) It was not the kind or quality of the evidence that was objected to, but the proof of the fact itself. But, in fact, it was not objectionable for any purpose. If their report would have been favorable (and for this purpose it must be presumed that it would have been,) it would have been proper, even if false.

The material fact would be that she was informed (by Fleming & Crane) and believed the check to be good and, therefore, in purchasing it acted honestly and in good faith.

V. The court held, as a matter of law, that the defendant was entitled to a verdict, and refused to submit any question to the jury, and directed a verdict for the defendant, to which, as to all of the other rulings on the trial, the plaintiff's counsel excepted. This ruling was wrong. 1. The evidence in the case shows that the plaintiff purchased the check, which was negotiable, in good faith, and gave full value for it. She, then, and not the defendant, was entitled to recover as a matter of law. 2. If there was any conflict of evidence, or any question about her honesty or good faith in the transaction, it was a question for the jury.

Therefore, in either or any view of the case, the court erred in directing a verdict for the defendant, and a new trial should be granted.

*Thos. C. T. Buckley*, for the respondent. I. The legal character of a check is not altered by the certification, and the only obligation assumed by the certifying bank is that assumed by the acceptor of a bill of exchange.

II. A check is, in judgment of law, an inland bill of exchange. The definition of the instrument given in the cases and in the treatises is, that it is such an obligation. (*Chapman* v. *White*, 2 *Seld.*, 412. *Ætna National Bank* v. *The Fourth National Bank*, 46 *N. Y.*, 82, *Allen, J. Salt Springs Bank* v. *The Syracuse Savings Institution*, 62 *Barb.*, 105. *Edwards on Bills*, 57. *Robson* v. *Bennett*, 2 *Taunt.*, 388. *Farm. and Mechs. Bank of Kent Co.* v. *Butch. and Drov. Bank*, 4 *Duer*, 220; *S. C.*, 14 *N. Y.*, 623; 16 *id.*, 128, 144; 28 *id.*, 426. *Mead* v. *Merch. Bank of Albany*, 25 *id.*, 146, 150. *Claflin* v. *Farm. and Citizens' Bank*, *Id.*, 294. *Smith* v. *Miller*, 43 *id.*,

176.  *Barnes* v. *Ontaria Bank*, 19 *id.*, 159.  *Merchants'*
*Bank* v. *State Bank*, 16 *Wallace*, 647.

III.  The obligation assumed by the defendants, when
the check was certified, being that of an acceptor of a
bill of exchange, equivalent, as shown by the authorities
cited, to that of a maker of a demand note, it has been
held that after reasonable period has elapsed for present-
ment, this check is to be treated and considered as an
overdue obligation.  (*See Herrick* v. *Woolverton*, 41
*N. Y.*, 581.)  It therefore follows that the plaintiff could
not, receiving this check at the time she did, become in
judgment of law a *bona fide* holder thereof, so as to
overcome the equities existing between the bank and
Meyer & Greve, the previous holders to whom the
check was paid, and hence the court, as matter of
law, properly instructed the jury to find for the de-
fendants.

IV.  The instrument in question having a certain de-
fined character in the law, and its capacity for negoti-
ation when dishonored or overdue in judgment of law,
being settled by the law, which also determines the legal
position of the party taking the same when so dishon-
ored, any custom of the mercantile community, such as
was offered to be shown, was incompetent and irrelevant,
and was properly excluded.  To show that certified
checks were received in New York as representing the
amount in gold they bore on their face, would have no
legal weight on the question of title of the plaintiff—a
woman not in business—acquired in New Orleans, and
no offer was made to prove the custom in New Orleans.
To show a custom to keep them in circulation without
presentment, as an answer to the legal consequences
of that act would be incompetent.  (*See Wheeler* v.
*Newbould*, 16 *N. Y.*, 392, 402).

V.  The question of *bona fides* of Mrs. Nolan's owner-
ship was a question of law, and not of fact, and, there-
fore, no error was committed by the court in refusing

to submit that question to the jury. 1. In no aspect of the case can plaintiff be truly considered a *bona fide* holder of the check. She did not receive the same in the usual course of business, and without notice of facts tending to impeach the validity of the paper. She had distinct notice, from the date of the check, that there was an irregularity somewhere. A check so certified is said by Gould, J., in *Claflin* v. *The Farmers' and Citizens' Bank*, to have no time to run, and credit in the light of time given is no element of it. Yet, in the face of this irregularity, in a city different from that on which the check was drawn, she loans to a perfect stranger $4,000. 2. Plaintiff lacks every element of *bona fides* and value. She was not in business, nor did she receive it in any course of business. The contrivance of bringing in a woman to represent the title is old and stale, and evidence that no business man would have touched it. A woman who goes out of her way to dabble in what she calls business, must take its result, and cannot shelter herself under the privilege that she was a woman, and knew nothing of business. 3. She did not purchase this check, which is the only excusable case in which any rule of value can be invoked for her protection, nor did she loan on it, because she loaned on the obligation of a third party, and the assurances of a friend who acted as the go-between.

*By the Court*, BRADY, J. The view adopted on the trial of this action seems to have been, that the check in judgment of law was dishonored at the time of its transfer to the plaintiff, and therefore subject to all the equities existing in favor of the owners at the time it was stolen. The check is dated 21st of Jan. 1865, drawn by M. Morgan's Sons, payable to their own order and indorsed by them. It was, on or about that date, accepted by the defendants and not only certified to be good, but registered. On the 4th of February, 1865, it was in the

possession of the firm of Meyer & Greve of this city, and on that day stolen from their book-keeper. It appears that notice of the theft was given to the defendants, or the payment of it stopped, on the same day, and that nothing further was heard of it by Meyer & Greve until May or June of 1868. The circumstances disclosed seem to establish that the check was designed for circulation, and not for immediate payment by the defendants. It was in the hands of Meyer & Greve as late as the 4th of February, but it does not appear in what manner they obtained it. Whether it was passed to them by the drawers or reached them through a line of holders does not appear. The plaintiff gave value for it, and took it in a legitimate manner. Regarding it as worth its face and desirous of investing her money, she made the only inquiries which she was called upon to make, before accepting it. If the signatures to the check and certificate were genuine, she was not bound by anything appearing upon the face of it, to exercise any other caution, vigilance or diligence, so far as the defendants were concerned. They had appropriated the funds to pay the check. It was in fact paid by the drawers because the certificate and registry was not only a debit against their account and a withdrawal of its amount from their funds, but an appropriation of such sum for the holder, whoever he might be. The check was honored, therefore, because it was accepted, and so far as the drawers were concerned, was by such acceptance paid. If the holder after acceptance and certification delayed presentation for payment, it was to his prejudice only. He might lose the interest which he could have made by proper investment, but whether he thought such a result judicious or not, was a matter resting entirely within his own power or discretion. The proposition, therefore, that from the delay in presenting it for payment, it might be deemed dishonored like a promissory note payable on demand is utterly untena-

ble. The answer to it is that the check was not dishonored; on the contrary it was paid by the drawers by an absolute appropriation of their funds to meet it, which the defendants held for the transferee, whoever he might be. No element of this kind marks the circulation or transfer of the promissory note which has not been paid, and for which no fund has been specially created. We were not referred to any case maintaining the proposition stated, and none has been found. The certificate "imports that the drawer has funds or means convertible into funds, in the hands of the drawee, at the time, which shall be retained and devoted to the payment of the paper on presentation. If it does not mean this it is a sham and a snare." BROWN, J., in *Farm. and Mech. Bank* v. *B. and Drov. Bank* (28 *N. Y. Rep.*, 428,) says: "Unless the word good, as said in *Massey* v. *The Eagle Bank*, (9 *Metcalf*, 309,) carries with it a binding evidence of the fact that the money is in the bank to meet that particular check, and that it will be paid to bearer at any time when presented, it is of no practical utility."

"Checks drawn upon banks or bankers thus marked and certified enter largely into the commercial and financial transactions of the country. They pass from hand to hand in the payment of debts, the purchase of property, and in the transfer of balances from one bank to another. In the great commercial centres they make up no inconsiderable portion of the circulation, and thus perform a useful, valuable, nay, an almost indispensable office." These are views also expressed by BROWN, J., in the case (28 *N. Y.*) above cited, and are utterly inconsistent with the proposition that checks may not at any time during the running of the statute of limitations be employed in the manner indicated. Chief Justice DENIO (14 *N. Y. Rep.*, 624,) said: "The object of a dealer, in procuring his check to be certified, is to enable him to obtain credit with others who might not be willing to

trust to his personal representations of the existence of funds to meet the draft, or his assurance that he would not withdraw them to the prejudice of the holder. This effect belonging to certified checks enables them to be extensively used in payments and settlements at the place where they are drawn and, to a more limited extent, as remittances to other places." The character thus assigned these instruments, makes them in effect a circulating medium capable of being passed from hand to hand by delivery and chiefly upon the credit of the bank as primary liable. And hence lies the difference between them and inland bills of exchange which, for the purpose of charging the various parties, they are considered to resemble. The object of certifying the check is to give it currency — is to induce third persons to accept it freely as they would bills of the bank; and hence it does not lie with the bank to assert that though the bill was good on the day it was certified, it has since become worthless by the withdrawal of the drawer's funds. Unless the certificate be treated as a compact or agreement that the check shall be paid, it fails to answer the purpose for which it is sought and given. (*Edwards on Prom. Notes and Bills*, 406, 407.)

"The sole and manifest object of the maker or holder of a check, in requiring it to be certified, is to enable him to use it as money." (*Per Oakley, J., in Willetts* v. *The Phœnix Bank*, 2 *Duer*, 121;) and again he said: "The certificate is a useless form unless it means, not .merely that the check was good when certified, but that it will be good when presented for payment. * * * The obligation of the bank is simple and unconditional, to pay upon demand, and in all such cases the demand may be made whenever it suits the convenience of the party entitled to the stipulated payment." The certificate is to be regarded as an acceptance payable on demand, and was obligatory until paid or the statute of limitation should attach as a bar. (*Mead* v. *Merchants' Bank of*

*Albany*, 25 *N. Y.*, 150.  16 *N. Y. Rep.*, 128, *per Wright and Selden, Justices.*)  The effect of those cases is, that the bank becomes the party dealing with the holder, being primarily liable; and if the bank has no valid defence the holder must recover.  The question of equities between any of the prior parties cannot intervene against a *bona fide* holder for value.  He deals upon the paper alone, looking to the bank as the primary, and, in most instances, the only reliable debtor.  It is the financial character of acceptor that enters into the purchase or acceptance of the check, and its assumed ability to pay, which does not exist with reference to individuals.

The result is, in regard to this case, that the learned justice erred in deciding that the plaintiff was not entitled to recover because the check was in judgment of law dishonored.  An acceptor is not discharged by the bill not being presented for payment for three or four years after it becomes due; he is only discharged by payment of the bill, or by a distinct and direct agreement by the holder to discharge him.  (*Farquhar* v. *Southey*, 2 *Carr. & P.*, 497.  *Dingwall* v. *Dunster*, *Doug.*, 247.  *Story on Bills*, § 252.)  The acceptor of a bill or note always remains liable.  The acceptance is proof of his having assets in his hands, and he ought never to part with them unless he is sure that the bill has been paid by the drawee.  He may, however, be relieved by the statute of limitations, as already suggested.  As between the holder and the bank, the acceptance renders the latter the primary debtor, and the cases relating to the duty to demand payment in a reasonable time become inapplicable.  These cases govern the relation between the holder and drawer.  (*Little* v. *Phenix Bank*, 2 *Hill*, 429.  *Willetts* v. *The Phenix Bank*, *supra*.  *Farm. and Mech. Bank of Kent* v. *B. and Drov. Bank*, 4 *Duer*, 219.)

The check having been stolen, it became the duty of

the plaintiff to establish that she was a *bona fide* holder for value, and upon that question she asked to go to the jury, which was denied. There was evidence on that subject which was independent of that of the witness Crane, and that of the plaintiff, which was stricken out; and the refusal to submit the question was in accordance, no doubt, with the view entertained by the learned justice and already suggested — that the check was overdue and taken subject to existing equities. For these reasons the plaintiff was prejudiced, and a new trial should be granted.

Ordered accordingly.

[FIRST DEPARTMENT, GENERAL TERM at New York, November, 1873. *Ingraham* and *Davis,* Justices.]