By the Court. Oakley, Ch. J.
Whether the teller had any authority from the bank to certify the checks in suit, is not a question that we are called upon to consider under the pleadings, since the complaint avers, and the answer in terms admits, that the certifying of the checks was the act of the defendants.
The case, therefore, of Massey v. The Eagle Bank (9 Metc. 309) is not applicable, nor is it necessary now to say whether we should have followed that decision, had the question, as to the authority of the teller, been properly raised.
The objection that the checks were not negotiable, and, consequently, that the plaintiff being merely an assignee, took them subject to every defence to which they were liable when transferred to him, was much insisted upon in the argument; but we are satisfied that it is untenable.
One of the checks was payable to the order of 1658, the other three to the order of bills payable; and as the required order could not, in either case, possibly be given, the checks, unless *130 transferable by delivery, were payable to no one, and were void upon their face. The law is well settled, that a draft payable to the order of a fictitious person, inasmuch as a title cannot be given by an endorsement, is, in judgment of law, payable to bearer. (Vin. v. Lewis, 3 Term R. 183; Minot v. Gibson, id. 281, S. C. 1 H. Black. 569, affirmed in the House of Lords.) And it seems to us quite manifest that in principle these decisions embrace the present case. At any rate, the bank, by certifying the checks as good, is estopped from denying that they were valid as drafts upon the funds of the maker, and, consequently, were. payable to bearer. The giving of such a certificate^ if otherwise construed, would be a positive fraud.
The only question, therefore, that remains to be considered, is, whether the facts that payment of the checks was not demanded until nearly two months after they were certified, and that in the meantime the maker had drawn all his funds from the bank, including those represented by the checks, constitute a valid defence ?—for, if not, the plaintiffs are clearly entitled to our judgment.
The answer to the question evidently depends upon the construction to be given to the act of the proper officer of a bank in certifying a check. Is it a mere declaration of an existing fact? or does it create a new and binding obligation on the part of the bank? Is it simply a declaration that the maker had then funds in the bank corresponding with the amount of the check? or is it an appropriation of those funds to the credit of the check, and a promise that, upon demand, they shall be applied to its payment ? If the former, the defendants-are not liable. If the latter, they have no defence.
That the latter is the true legal interpretation of a certified check, we cannot doubt, since, upon any other construction, the act of certifying would be nugatory, or would operate as a fraud. It would be nugatory, if understood by all, as creating no obligation, on the part of the bank, to retain funds to meet the payment of the check. It would operate as a fraud, if generally understood as creating an obligation which the law would hold not to exist.
The sole and manifest object of the maker dr holder of a *131 check, in requiring it to he certified, is to enable him to use it as money; that is, to pass it to others with the same certainty of its acceptance, as affording the same security to a holder; and the bank, in complying with the request, must know that such is its object.
It is, therefore, certain, that a bank, by certifying a check, means to give it a currency and value that would not otherwise belong to it; and this additional value, it seems to us, can only be given by interpreting the certificate as an unconditional promise of payment, whenever payment shall be demanded; otherwise, a certified check would be of no more use or value than an ordinary check, and would afford no greater security to a holder. The certificate is a useless form, unless it means, not merely that the check was good when certified, but that it will be good when presented for payment. This construction is, therefore, necessary to give effect to the apparent intention of the parties, and, at any rate, is necessary to prevent the check from being subsequently used as a means of deception and fraud.
We did not'1 understand the counsel for the defendant as denying that a certified check imports an obligation on the part of the bank to retain sufficient funds of the maker to meet.its payment, but this obligation, he contended, exists only for a limited period, and may, therefore, be wholly discharged by the laches of the holder in demanding payment.
When this demand is delayed, even for a few days, the counsel insistéd, that the holder of the check takes upon himself the risk of a withdrawal of the' funds which, had he acted with due diligence, would have been applied to its payment. Such is, indeed, the nature of the defence set up in the answer, in the distinction which it avers to exist between a certified check and a certificate of deposit; but no evidence of the general usage and custom which the answer alleges as establishing this distinction, was given upon the trial, and, in the absence of such • evidence, there is no ground of principle, it seems to us, upon which it can be maintained. We can perceive no reasons for restricting the obligation of the bank within the limits suggested, or any other, and, consequently, none for the imputation of laches to a holder.
*132 The obligation of the bank is simple and unconditional to pay upon demand, and in all such cases the demand may be made whenever it suits the convenience of the party entitled to the stipulated payment.
When the business of a bank is properly conducted, it is not possible that it can sustain any loss or prejudice from this interpretation of its contract—the contract which it makes in certifying a cheek, and it is only where delay may be prejudicial that the want of due diligence may be legally imputed, and operate as a bar to a claim otherwise valid. When the business of the bank is properly conducted, it is the duty of the officer certifying the check to cause it to be immediately charged, as paid, in the account of the drawer, and when this is done, the sum thus charged will remain as a deposit in the bank to the credit of the check, and be for ever withdrawn from the control of the maker, except as a holder of the check. Such a deposit stands exactly upon the same ground as every other. The bank, instead of being prejudiced, is benefited by the delay of its owner in calling for its payment, and can with no more propriety impute laches to the unknown holder of the check than to a known holder of an ordinary deposit. The loss which the bank, in this case, by resisting the demand of the plaintiff, seeks to avoid, has resulted from the laches of the teller, in suffering Tripler, the maker of the checks, to withdraw the funds that were appropriated to their payment, but assuredly neither the laches of its own officer, nor the fraud of Tripler, can excuse the bank from a compliance with its own engagement. As we intimated upon the argument, there is, in reality, in good sense, no distinction, in the nature of the liability created, between a certified check and a note of the bank payable on demand. Each is intended to circulate as money —each is an absolute promise to pay a specific sum upon demand, and laches in making the demand is no more imputable in the one case than in the other. The only difference between them is, that the promise which in the note is expressed, in the check is implied.
The Supreme Court of Massachusetts, in the case of Massey v. The Eagle Bank, which was cited and much relied on by the counsel for the defendants, although they denied the au *133 thority of the teller to bind the bank, gave the same construction to a certified check as that which we now have explained and adopted. The learned judge who then delivered the opinion of the court said, that “unless the word ‘good’ carries with it a binding evidence of the fact that the money is in the bank to meet that particular check, and that it will be paid to the bearer at any time when presented, it is of no practical utility. It will amount to no more than this, viz. that at the moment of its first presentment the check was ‘ good,’ but not that it will continue so two horns after, if not being offered -other checks of the same drawer are presented to the amount of his deposit in the bank.” (9 Metc. 311.)
We shall notice briefly the last ground upon which it was argued that the plaintiffs were not entitled to recover, namely, that the circumstances under which the checks were transferred to them, ought to have excited then* suspicions, and led them to inquire, and were, therefore, sufficient to charge them with a knowledge of the facts, which, upon inquiry, they would have ascertained. Had they inquired, they would have ascertained that Tripler had withdrawn all his funds from the bank, and was guilty of a fraud in attempting to transfer checks which he ought to have returned or destroyed.
Assuming that the doctrine of constructive notice is applicable at all to the present case, and if applicable, that the question properly arose upon the evidence, it was in effect, and we think rightly, submitted to the jury, and was settled by their verdict. We cannot say that their verdict was against evidence.
The plaintiffs are entitled to judgment upon the verdict for the sum of §4,000, which they advanced upon the checks, with interest and costs.