# Russell K. Bickford

*v.*

# The First National Bank of Chicago.

1.  Checks — *certified and uncertified — of their nature — and of the ultimate liability of the drawer.* A check is, substantially, an inland bill of exchange, and the rules applicable to such bills are alike applicable to checks.

2.  The check of a depositor upon his banker, delivered to another for value, transfers to that other the title to so much of the deposit as the check calls for, which may be again transferred by delivery, and, when presented at the bank the banker becomes the holder of the money to the use of the owner of the check, and is bound to account to him for that amount, provided the drawer has funds to that amount on deposit, subject to his check, at the time it is presented. These checks are received and passed, and deposited with bankers as cash, subject, of course, to be made good if not paid on presentation. This is the legal effect of an ordinary uncertified check.

3.  A certified check does no more. The receipt of a certified check is not, of itself, payment. Such a check does not cease to be commercial paper and become money. Certifying a check to be "good," is nothing more than a promise by the bank upon which it is drawn to pay it when presented, as in the case of the acceptance of a bill of exchange. If an accepted bill be protested for non-payment, and the drawer duly notified thereof, he is bound to pay the bill, with damages and costs. The same is the law with regard to a certified check.

4.  As the acceptance of a bill of exchange does not discharge the drawer, so neither should the acceptance of a check, manifested by the word "good," placed upon it by the bank, discharge the drawer. They rest on the same principles. In this respect there is no difference between an uncertified, and a certified check, the dishonor of either must make the drawer liable.

5.  There is this difference, however, between a certified and an uncertified check ; in case of the former, the amount of the check is supposed to be at once charged up against the drawer, and thus placed beyond his control, while the holder of an uncertified check may be anticipated by another, who also holds a check on which he may draw the money. The certificate is an unconditional promise on the part of the bank to pay the check on demand. The object in certifying a check is to give it a currency and value, and to enable the holder to use it as money.

6. Although it be the fact, that certified checks pass from hand to hand as cash, still they are not cash or currency, in the legal sense of those terms, and they do not lose, on that account, any of their characteristics as bills of exchange, and therefore, when dishonored, the holder has a right to look to the drawer for payment.

7. CHECKS — *diligence required to hold the drawer liable.* In order to fix the liability of the drawer of an inland bill of exchange, or check, in case of non-payment, the holder should present the bill or check to the person or bank on which it is drawn, within business hours of the day next succeeding the receipt of the paper, and give notice of the dishonor to the drawer.

8. In this case, a check was drawn and certified and deposited in a bank, after ten o'clock, A. M., and before three o'clock, P. M., on a certain day, where it remained until the next morning, when it was taken, in the usual course of business, to the bank on which it was drawn. The bank was closed, and continued so. The check was protested for non-payment, and due notice given. This was sufficient diligence to hold the drawer.

9. SAME — *right of the holder to look to both the acceptor and drawer of a check.* The holder of a certified check has the right to hold the drawee and acceptor, as well as the drawer. So, where the acceptor has failed and made an assignment, the holder waives none of his rights against the drawer by giving notice to the assignee of the acceptor not to pay over any money to the drawer, out of assets which might come to his hands in that capacity.

10. AGENT — *when he will be bound personally.* A person, contracting as agent, will be personally responsible, when, at the time of making the contract, he does not disclose the fact of his agency, but treats with the other party as being himself the principal.

11. SAME — *effect of a person signing as "agent."* Where the drawer of a check signs it, "A. B., agent," that mode of signing does not disclose the fact that the drawer is the agent of any one, and, if that is the only indication of his agency, he will be bound personally as the drawer.

APPEAL from the Circuit Court of Cook county; the Hon E. S. WILLIAMS, Judge, presiding.

This was an action of assumpsit brought in the court below by the First National Bank of Chicago against Russell K. Bickford, as the drawer of a certified check, which was protested for non-payment, and due notice given. A trial resulted in a finding and judgment for the plaintiff. The defendant appealed.

The opinion contains a sufficient statement of the case.

Messrs. RUNYAN & AVERY, for the appellant.

Messrs. FULLER & SHEPARD, for the appellee.

Mr. Justice Breese delivered the opinion of the Court:

This was an action of assumpsit brought in the Circuit Court of Cook county, by the First National bank of Chicago against Russell K. Bickford, on a check drawn by him on the banking house of J. G. Conrad, and certified by the teller of that house as "good."

The check was drawn and certified and deposited in the First National bank, after ten o'clock A. M., and before three o'clock P. M., of the 29th day of September, 1864, for the benefit of one Beardsley. On the same day the First National bank wrote the bank of Manitowoc, that their account had credit by Beardsley, $1,547$\frac{51}{100}$. The check was placed in the drawer where the bank kept its currency, and remained there until the next morning, when it was taken in the usual course of business to Conrad's bank for payment. The bank was then closed and did not open its doors for business on that day, nor has it since. The check was protested for non-payment, and due notice given to the parties interested.

This suit is brought to recover the amount of the check of the drawer, and the question is fairly presented, whether the receipt of a certified check is of itself payment, or whether a check, upon being certified, ceases to be commercial paper and becomes money.

This a very interesting question, and one on which able argument has been expended on both sides.

We will consider, first, what is the effect of the acceptance of an uncertified check to discharge an indebtedness? next, the difference in this regard between a certified and an uncertified check; and, last, is the liability of the drawer of a check of either description fixed by protest and notice of non-payment by the drawee?

It is, by the universal consent of the commercial world, the contract between a depositor and his banker, that the banker when he receives the deposit shall pay it out on the presentation of the depositor's checks, in such sums as those checks may call for, and to the person presenting them; and he agrees, with

the whole world, that whoever shall become the owner of such check shall, upon its presentation, thereby become the owner, and entitled to receive the amount specified in such check, provided the drawer shall at that time have that amount on deposit.

The check of a depositor upon his banker, delivered to another for value, transfers to that other the title to so much of the deposit as the check calls for, which may be again transferred by delivery, and, when presented at the bank, the banker becomes the holder of the money to the use of the owner of the check, and is bound to account to him for that amount, provided the party drawing the check has funds to that amount on deposit, subject to his check, at the time it is presented. *Munn et al.* v. *Burch et al.*, 25 Ill. 40. These checks are received, and passed, and deposited with the banker as cash, subject, of course, to be made good if not paid on presentation. Id. 39. This is the legal effect of an ordinary uncertified check.

Does a certified check do more? What peculiar virtue does the certificate "good" bestow upon the check? Does it, should it, amount to any thing more than an acknowledgment, by the bank on which it is drawn, that the drawer has funds on deposit to meet it, and which the bank will pay over to the holder of the check upon its presentation? Is it any thing more on the part of the bank than its guaranty that the check is drawn in good faith, and will be paid on presentation, and, on the part of the drawer passing a check so certified, he is enabled to assure the public, or those with whom he is dealing, that every thing has been done which the law implies from the fact of drawing the check, namely, that he has funds in the bank sufficient in amount to pay the check? All this is presumed with regard to an uncertified check. There may be said to be this difference between a certified and an uncertified check: In the former description, the amount of the check is supposed to be at once charged up against the drawer, so that he can no longer control the fund on which it is drawn, or rather so much of it as is specified in the check. After being so charged, it is no longer his money but the money of the holder of the check. It is not so with an uncertified check. A party having $1,000

on deposit with a bank, may give A a check for the amount, and, before A presents it, he may be anticipated by B who has also a check for the amount on which he has drawn the money. One effect, then, of a certified check, is to inspire confidence that it is drawn on an existing fund in good faith, and is no longer under the control of the drawer, the supposition being, that it has been charged by the bank against the drawer in his account as paid, which, however, was not done in the case before us.

Bank checks, whether certified or not, rest a good deal upon the principles of the law of negotiable paper. Some eminent jurists of this country have considered them as a species of inland bills of exchange, and they are so considered in England. COWEN, J., in *Harker* v. *Anderson*, 21 Wend. 372, says, a check is a bill of exchange, payable on demand, that bill is the *genus*, and check is a *species*. RADCLIFFE, J., in *Conger* v. *Armstrong*, 3 Johns. Cases, 5, says a check possesses all the requisites of a bill; and KENT, J., in the same case, said, checks are substantially the same as inland bills, and are negotiable, like inland bills payable to bearer; and again he says, a check has all the requisites of a bill of exchange. Id. 8. The drawer is not understood as promising to pay, except upon the default of the drawee. All the authorities seem to agree, that bank checks are substantially inland bills of exchange, and the rules applicable to them are alike applicable to checks. *Smith* v. *Jones*, 20 Wend. 192; *Merchants' Bank* v. *Spicer*, 6 id. 445; *Murray* v. *Judah*, 6 Cow. 484; *Conroy* v. *Warren*, 3 Johns. Cases, 259; *Glenn et al.* v. *Noble et al.*, 1 Blackf. 104; *Shrieve and Comb* v. *Duckham*, 1 Littell, 194; *Humphries* v. *Bickwell*, 2 id. 297; *Satcliff* v. *McDowell*, 2 Nott and McCord, 251; *Woods* v. *Schroeder*, 4 Harr. and Johns. 276. A check is always supposed to be drawn against funds, and this court has held, in the case of *Munn* v. *Burch*, *ante*, that the check is an assignment, or appropriation of the funds to the holder of the check. Certifying a check to be "good," is nothing more than a promise by the bank to pay it when presented, as in the case of the acceptance of a bill of exchange. Now, in the latter case, what are

the rights and duties of the parties? If the bill is accepted by the drawee, and protested for non-payment, and the drawer duly notified thereof, the law is well settled he is bound to pay the bill, with damages and costs. The same is the law with regard to a certified check. *Barnet* v. *Smith*, 10 Foster (N. H.) 206. In *Willets* v. *The Phœnix Bank*, 2 Duer, 121, it was held, that certifying a check to be " good " meant, not only that it was good when certified, but that it shall be " good " when presented for payment. If this was not so, the act of certifying would be nugatory, and amount to a fraud.

This case holds, and so does the case in 10 Foster, that there is really no distinction, in the nature of the liability created, between a certified check and a note of the bank payable on demand, as each is intended to circulate as money, each is an absolute promise to pay a specific sum on demand. The only difference between them is, that the promise which is *expressed* in the bank note is *implied* in the check. They hold, that the act of the bank officers, in certifying a check, is to appropriate the funds of the drawer in the bank, to the credit of the check, and a promise that upon demand they shall be applied to its payment. The object of getting a check certified is to enable the holder to use it as money ; that is, to pass it to others with the same certainty of its acceptance, as affording the same security to a holder, and, by certifying, the bank meant to give the check a currency and value that would not otherwise belong to it, and this additional value can only be given to it by holding the certificate to be an unconditional promise of payment whenever payment shall be demanded. 2 Duer, 121, *ante*.

If, then, a check, certified or not, is like an inland bill of exchange, the drawer of this check, the appellant here, undertook, on his part, that the drawee, Conrad, should accept and pay, and Conrad so most emphatically promised, by certifying it ; and, as he did not pay, the drawer is answerable, he having due notice of the non-payment.

Whether the check was received by the appellee as cash is not a question in this case, inasmuch as the court tried the

issue, and this question was necessarily before it, and found against the appellant, and so also was the question of the intention of appellee to look to Conrad and not to the appellant for payment.

Although it be the fact, that certified checks pass from hand to hand, as cash, still they are not cash or currency, in the legal sense of those terms, and they do not lose on that account any of their characteristics as bills of exchange, and therefore, when dishonored, the holder has a right to look to the drawer for payment. *Munn et al.* v. *Burch, ante.* As the acceptance of a bill of exchange does not discharge the drawer, so neither should the acceptance of a check, manifested by the word "good" placed upon it by the bank, discharge the drawer. According to the weight of authority they seem to rest on the same principles. In this respect, there can be no difference between an uncertified and a certified check, the dishonor of either, on well settled principles, must make the drawer liable.

Upon the last question, did appellee in presenting the check for payment at the bank, and giving notice to appellant of its non-payment, use all the diligence required in such cases, in order to hold the drawer? This question the court below, sitting as a jury, also passed upon, and we think it did not err in its finding upon it.

In order to fix the liability of the drawer of an inland bill of exchange, or check, in case of non-payment, the holder should present the bill or check to the person or bank on which it is drawn, within business hours of the day next succeeding the receipt of the paper, and give notice of the dishonor to the drawer (1 Parsons on Notes, etc., 466, 477), which was done in this case.

Another point is made by the appellant, and that is, the verbal notice given by appellee's attorney, to Conrad's assignee, not to pay appellant any money that might be coming to him from Conrad's assets, as the bank looked to Conrad for the amount of the check.

The bank had a right to hold Conrad as the drawee and acceptor of the check, as well as appellant, the drawer. This

was the legal right of the bank. If the bank obtained a judgment against appellant, it might garnish Conrad's assignee, and thus secure the funds in his hands to appropriate in payment of the judgment, if appellant did not discharge it. He had "two strings to his bow."

Upon the point that appellant was but the agent of one Selden, in drawing this check, it is not established, that appellees knew this fact when the draft was accepted; no one but appellant appears to have been known in the transaction.

The rule is well settled, that a person contracting as agent will be personally responsible, when, at the time of making the contract, he does not disclose the fact of his agency, but treats with the other party as being himself the principal; in such case it follows irresistibly, that credit is given to him on amount of the contract. Story on Agency, §§ 266, 326.

No such disclosure was made, when this check was made and delivered. Although the check was signed "R. K. Bickford, agent," nothing was communicated by that fact. It might be a signature adopted by appellant, from caprice or other motive, but it did not reveal to the appellees he was then, in the act he was doing, acting as the agent of Selden or of any one else.

We have now discussed the principal questions made, and are satisfied appellant was liable on the check, and the judgment must be affirmed.

*Judgment affirmed.*