SILVA ET AL., PLAINTIFFS AND RESPONDENTS, *v.* ABOY, GIORGETTI & CO., LTD., ET AL., DEFENDANTS; ABOY, GIORGETTI & CO., LTD., APPELLANTS.

APPEAL from the District Court of Aguadilla in an action of unlawful detainer.

MOTION for the dismissal of the appeal.

No. 1088.—Decided January 30, 1914.

UNLAWFUL DETAINER—APPEAL—DEPOSIT OF RENT DUE.—In accordance with section 12 of the Unlawful Detainer Act of March 9, 1905, the defendant shall be denied the right of appeal unless he deposit in the office of the secretary of the court within five days after the date of the judgment the amount of rent due, but when the last day is a legal holiday, the term expires on the day following by operation of law.

ID.—APPEAL—DEPOSIT OF RENT DUE.—When according to a contract of lease the rent is payable at the expiration of periods of six months, the appellant in

an action of unlawful detainer is required to deposit in the lower court only the rent due for the six months which had expired when the judgment was rendered without including the rent for the time which had elapsed from the expiration of the last six months to the date when the judgment was rendered.

ID.—DEPOSIT OF RENT DUE.—In accordance with section 1138 of the Revised Civil Code in connection with section 2588 of the Revised Statutes of the United States, the deposit to be made by an appellant in the office of the secretary of the lower court of the amount of rent due should be made in the kind of money agreed upon in the contract of lease, or, in the absence of such an agreement, in the legal silver or gold current in Porto Rico, or in legal tender treasury notes.

ID.—CHECKS AS DEPOSIT—DEPOSIT OF RENT DUE.—In accordance with section 1138 of the Civil Code, when a deposit of the amount of rent due is made by an appellant in a case of unlawful detainer in checks accepted by the drawee, if said checks are not collected by the creditor, or not having been accepted by him their value is not affected by his fault, such deposit is contrary to law and does not meet the requirements of section 12 of the Unlawful Detainer Act of March 9, 1905.

ID.—DEPOSIT IN CHECK ACCEPTED BY BANKS—CONDITIONAL INDORSEMENT.—In the case at bar the appellant deposited in the lower court the amount of rent due in checks accepted by the banks on which they were drawn, said checks bearing the following indorsement: ''Pay to the order of Don Jorge Silva Sapia, Don Tomás Silva y Rodríguez and the Plamicrondes Agricultural Company, as a deposit made in their favor, when the final judgment is rendered in the appeal which we have taken in an action of unlawful detainer brought against us in the District Court of Aguadilla.'' *Held:* That even supposing (and it is not true) that checks accepted by banks have the effect of a real deposit in cases of this kind, the accepted checks deposited in the present case would not have such effect because of the conditional indorsement upon them.

The facts are stated in the opinion.

*Messrs. Carlo Franco Soto & Juan B. Soto* for respondents.

*Mr. Herminio Díaz Navarro* for Aboy, Giorgetti & Co., Ltd.

MR. JUSTICE DEL TORO delivered the opinion of the court.

Jorge Silva, José Tomás Silva and the Plamicrondes Agricultural Company brought an action of unlawful detainer in the District Court of Aguadilla against Aboy, Giorgetti & Company, Ltd., and the Plata Sugar Company, based on the nonpayment of the rentals of certain rural properties due and payable at the end of periods of six months. The defendants were summoned and the trial having been duly had, the district court, on December 2, 1913, rendered judgment ordering the eviction prayed for.

Defendants Aboy, Giorgetti & Company, Ltd., appealed from the said judgment to this court on December 3, 1913, and on the 8th of the same month their attorney deposited in the office of the secretary of the district court a check No. 2901 on the Bank of Nova Scotia of San Juan for $1,875; another, No. 2123, on the same bank for $219; another, No. 93365, on the Banco Territorial y Agrícola of San Juan for $800, and another, No. 166, on the American Colonial Bank for $856, making a total of $3,750, the amount of rent due on September 6, 1913. The first three checks are endorsed "accepted" and the last "certified" by the respective banks which, as stated on the checks, are depositaries of the funds of the Government Treasury, and all the checks bear the following indorsement: "Pay to the order of Don Jorge Silva Sapia, Don Tomás Silva y Rodríguez and to the Plamicrondes Agricultural Company, as a deposit made in their favor, when the final judgment is rendered in the appeal which we have taken in an action of unlawful detainer brought against us in the District Court of Aguadilla."

The case standing thus, the plaintiffs and respondents filed a motion in this court for the dismissal of the appeal because of noncompliance by the appellants with the provisions of section 12 of the Law of Unlawful Detainer. The said motion was fully argued by the attorneys for both parties in open court.

The law invoked by the respondents reads as follows:

"Section 12.—Whenever the action of unlawful detainer is founded upon the nonpayment of the amounts agreed upon, the defendant shall be denied the right of appeal unless he deposits in the office of the secretary of the court the amount due as the price up to the date of the judgment. In all other cases it shall be an indispensable requisite to the right of appeal on the part of the defendant that he furnish an undertaking, to the satisfaction of the court, binding himself to pay all damages which may be occasioned to the plaintiff, and also the costs of the appeal. Both the deposit and the undertaking referred to in this section shall be made or filed within the time granted for taking an appeal." Acts of 1905, p. 185.

The respondents contend:

(*a*) That the deposit was not made within the time fixed by the law;

(*b*) That the whole amount due was not deposited;

(*c*) That the checks deposited in the office of the secretary do not constitute the deposit prescribed by the law and that the indorsement on the said checks is illegal in form.

Let us examine the first question. Judgment was rendered and entered on December 2, 1913, and the checks were deposited on the 8th of the same month. The time for taking the appeal and making the deposit, or five days, expired on December 7, 1913, but as the 7th was a Sunday the period was extended by law to include the 8th. The first question, then, must be decided against the respondents.

Let us examine the second point. We have stated at the beginning of this opinion that the rent under discussion was payable at the end of periods of six months. The last instalment fell due on September 6, 1913. Judgment was rendered on December 2, 1913, and the respondents contend that the deposit should not be limited to the rent for the six months expired but should include all the rent due up to the very date of the judgment. The same question was decided by this court in the case of *Mas et al.* v. *Borinquen Sugar Company,* 17 P. R. R., 923, in the sense that a deposit of the amount which is really due on the date of the judgment in accordance with the terms of the contract, is sufficient. The instalment for the six months ended September 6, 1913, was all that was due in the present case on the date of the judgment in accordance with the terms of the contract as found by the said judgment, and the deposit of the rent for that time was sufficient to meet the requirements of the statute.

Let us examine finally the third question raised.

The statute orders that in a case like the present where an action of unlawful detainer is based on nonpayment, the "amount due as the price" shall be deposited in the office of the secretary.

The purpose of the statute regulating this matter is to safeguard the interests of the plaintiff by preventing the defendant from continuing by virtue of the appeal in the possession of the property without paying the stipulated rent, and the said rent should be deposited in such a manner that, in a proper case, it may be immediately at the disposal of the plaintiff.

If the judgment appealed from is just, the debt of the appellants is money which should be paid in accordance with section 1138 of the Revised Civil Code in the specie stipulated and, should it not be possible to deliver the specie, in legal silver or gold coin current in Porto Rico.

Therefore, the deposit should have been made in the office of the secretary of the District Court of Aguadilla in the specie agreed upon, in silver or gold coin current in this Island or in Treasury notes in conformity with the provisions of section 2588 of the Revised Statutes of the United States.

Section 1138 of the Revised Civil Code also provides that the payment may be made in promissory notes payable to order or drafts or other commercial paper, but that in such cases they shall only produce the effects of payment when collected or when, by the fault of the creditor, their value has been affected.

In the present case the checks were drawn on banks which are depositaries of public funds and were accepted by the said banks.

The check is an instrument of commerce of recent creation. They were introduced into Spain from England and were regulated by the Code of Commerce of 1885.

In the preamble of said code it is said that ''There are two economic ends chiefly attained by the use of checks in the nations where they are known, particularly in England and the United States of America; first, to put in circulation money which, pending investment, private individuals have lying idle in their safes, thus benefiting the individuals and

enriching the State in general; second, to avoid the carrying about of money within the same place or from one place to another, both taking the place of bank notes and aiding in the liquidation of debts and fixed credits due among different merchants and bankers, the checks drawn in favor of one offsetting those drawn against the same one through the medium of clearing houses created for that purpose.

"But the attainment of either of these two ends necessarily supposes the existence of cash or negotiable securities deposited with the person on whom the check is drawn. Hence the fundamental and characteristic feature of this instrument is the previous deposit of funds actually belonging to the drawer with the drawee, by virtue of which the former may dispose of the whole or a part of the same in favor of a certain person or of simply the holder of the check. And in this also the check differs from a bill of exchange and even from a draft which do not require that a deposit be made previous to the time of their issue, it being sufficient that this be done later, either before or after the acceptance or payment." See Code of Commerce by Romero Girón, pages 372 and 373.

An order to pay, known in commerce by the name of check, is an instrument which permits the maker to withdraw for his benefit or for that of a third person the whole or part of the funds he may have at his disposal in the hands of the depositary. Article 534 of the Code of Commerce.

In legislating on checks the Spanish legislators made no provision regarding their acceptance. According to the Code of Commerce checks must be paid on presentation and the holder must present them for collection within five days after their issue if they are drawn on a person in the same place and within eight days if on a person in a different place. Should the holder allow this period to elapse he loses his right of action against the indorsers and also against the drawer if the funds against which it is drawn should disappear by reason of the suspension of payment or bankruptcy of the drawee.

If we examine the indorsements on the checks in question in this action in the light of the provisions of the Code of Commerce, we must conclude that they are not in harmony with the nature of the instruments. The checks were issued on December 6, 1913, and in accordance with the law they should have been presented for collection within eight days from that time at most. Nevertheless, the indorsements state that the checks are delivered to the secretary as a deposit and should be paid to the plaintiffs when this appeal is finally decided.

In view of the foregoing, we will examine the checks and their indorsements in the light of American jurisprudence and present commercial customs in Porto Rico.

Summarizing the jurisprudence, Cyc. says: "A check is a draft or order upon a bank or banking house purporting to be drawn for the payment at all events of a certain sum of money to a certain person therein named, or to him or his order or to bearer and payable instantly on demand. A check is negotiable by the law merchant and is substantially an inland bill of exchange drawn on a banker payable on demand. A check may, however, be payable at a future day without ceasing to be a check. It does not usually express any time or place of payment, nor is it usually presented for acceptance." 7 Cyc., 529, 530, 531.

"It has been said that a check differs from other bills and orders because of the implied contract of the bank as drawee to honor the checks of its depositor. Under this view it has been held in some States that a check is an assignment of the funds of the drawer in bank up to the amount named in it, and that the payee or subsequent holder may sue the drawee upon the check without acceptance or certification. It has also been held that the drawer may sue the drawee for the use of the holders of his outstanding checks. In most of the United States, however, and in England it is held that a check is not an assignment of any part of the funds in bank; that it is revocable until accepted or paid; that it cannot be

regarded as a debt due from the drawee to the holder so as to avail the holder as a set-off against an insolvent drawee; and that the holder cannot sue the bank upon an unaccepted check." 7 Cyc., 650, 651, 652.

According to our present commercial customs, checks are accepted or certified by the banks upon which they are drawn and then the real debtor is the drawee, the bank, the check representing an amount deposited in the bank in favor of the person to whom the check is payable.

In this regard the jurisprudence as summarized by Cyc. is as follows: "A check being payable on presentment its certification is often to be regarded, as against the drawer, as a payment by which he is discharged. This is so where the certification is procured by the holder after the check has been delivered. On the other hand the drawer will not be discharged by a certification procured by himself." 7 Cyc., 644. "A check may be revoked or countermanded by the drawer until it is paid, certified or transferred to a *bona fide* holder, but it cannot be countermanded after it has been accepted or after it has come by due transfer in the course of business into the hands of a *bona fide* holder for value." 7 Cyc., 647, 648.

Now, giving full effect and value to the checks in question in this case and admitting that, having been accepted by the banks upon which they were drawn, they represent the amount due by the appellants to the respondents deposited in the said banks and that, their acceptance having been requested by the appellants, the said appellants as well as the banks are still liable for the amount of the checks, yet it must be acknowledged that they do not constitute a "deposit of the amount due as the price" as required by law—not in accordance with section 1138 of the Civil Code, because the said checks were not collected, and not having been accepted by the creditor, their value was not affected by his fault; nor in accordance with American law, because, "although it is a fact that certified checks pass from hand to hand as cash,

it is also true that they are not cash or money in the legal sense of these terms.'' *Bickford* v. *First National Bank,* 42 Ill., 238; 89 Am. Dec., 440.

Furthermore, even if the conclusion could be reached—and it cannot—that checks accepted by banks of recognized solvency have the effect of an actual deposit in cases of this kind, still in this particular case they would not because of the manner in which they are endorsed. The rent due must be deposited in a manner which will enable its owner to receive it without any difficulty. The words ''when the appeal is finally decided, etc.,'' used in the indorsements, create a condition the fulfilment of which might give rise to different constructions and be sufficient perhaps to throw a legal doubt upon a right which should be perfectly clear.

The case of *Veve et al.* v. *Fajardo Sugar Growers' Association,* 18 P. R. R., 277, cited by the appellants, does not support their contention. It was not held in that case that a deposit made in certificates of deposit was valid of itself. On the contrary it was clearly stated that the party to whom payment was intended to be made by the said certificates was under no obligation to accept them. The circumstances of the case gave validity to the act. The words of this court as they appear in the opinion delivered by Mr. Chief Justice Hernández are as follows: ''In accordance with the provisions of law above transcribed the plaintiffs were not bound to accept the payment of the rent for the semester from July to December, 1910, and to receive the certificates of deposit sent by the defendant; but as they did not reject said certificates in an absolute manner, but returned them because they had observed some important error in them which had to be corrected, it is clear that they evinced an intention of accepting said certificates provided the corrections were made.''

Taking into consideration all the foregoing, the third question raised by the respondents should be decided in their favor and consequently the appeal should be dismissed for noncom-

pliance with the provisions of section 12 of the Unlawful
Detainer Act.

*Motion sustained and appeal dismissed.*

Chief Justice Hernández and Justices Wolf and Aldrey
concurred.