SILVA ET AL., DEMANDANTES Y APELADOS, *v.* ABOY, GIORGETTI & CO., LTD., ET AL., DEMANDADOS Y APELANTE EL PRIMERO.

APELACIÓN procedente de la Corte de Distrito de Aguadilla en un caso de desahucio.

MOCIÓN de la parte apelada para que se desestime la apelación.

No. 1088.—Resuelto en enero 30, 1914.

DESAHUCIO—APELACIÓN—TÉRMINO PARA CONSIGNAR EL PRECIO ADEUDADO.—De acuerdo con la sección 12 de la Ley de Desahucio de marzo 9, 1905, dentro

de cinco días de dictada sentencia debe consignarse en la secretaría el importe del precio adeudado para poder apelar, pero cuando el último día es feriado, por ministerio de la ley, el término vence al día siguiente.

ID.—APELACIÓN—CONSIGNACIÓN DEL PRECIO ADEUDADO—PRECIO DEL ARRENDAMIENTO PAGADERO POR SEMESTRES VENCIDOS.—Cuando de acuerdo con un contrato de arrendamiento el precio del mismo es pagadero por semestres vencidos, el apelante en un caso de desahucio solo está obligado a consignar en la corte inferior el importe del semestre vencido hasta la fecha en que se dictó la sentencia sin incluir el precio del arrendamiento correspondiente al tiempo transcurrido desde el vencimiento del último semestre hasta la fecha en que se dictó la sentencia.

ID.—APELACIÓN—CONSIGNACIÓN DEL PRECIO ADEUDADO.—De acuerdo con el artículo 1138 del Código Civil revisado en relación con la sección 2588 de los Estatutos Revisados de los Estados Unidos, la consignación que ha de hacer un apelante en la secretaría de la corte inferior del importe del precio adeudado, debe hacerse en la especie pactada en el contrato de arrendamiento, o en ausencia de tal pacto en moneda de plata u oro del curso legal en esta isla, o en billetes del tesoro de curso legal.

ID.—CHEQUES ACEPTADOS—CONSIGNACIÓN DEL PRECIO ADEUDADO—ACEPTACIÓN POR EL ACREEDOR.—De acuerdo con el artículo 1138 del Código Civil, la consignación hecha por un apelante en un caso de desahucio del precio adeudado en cheques aceptados por el librado, si dichos cheques no son realizados por el acreedor, ni aceptados por el mismo quedan perjudicados por su culpa, tal consignación es contraria a derecho e insuficiente a los efectos de la sección 12 de la Ley de Desahucio de marzo 9, 1905.

ID.—CONSIGNACIÓN DEL PRECIO ADEUDADO EN CHEQUES ACEPTADOS POR LOS BANCOS—ENDOSO CONDICIONAL.—En el caso de autos la parte apelante consignó en la corte inferior el precio adeudado en cheques aceptados por los bancos contra los cuales se libraron, con el siguiente endoso: ''Páguese a la orden de Don Jorge Silva Sapia, Don Tomás Silva y Rodríguez y la Sociedad Agrícola Plamicrondes, en calidad de depósito a su favor cuando se resuelva con carácter definitivo la apelación que hemos interpuesto en el caso que nos siguen en desahucio en la Corte de Distrito de Aguadilla.'' Se resolvió que aun en el supuesto, que no es así, de que cheques aceptados por bancos surtieren el efecto de una verdadera consignación en casos de esta naturaleza, los cheques aceptados consignados en el presente caso no surtirían ese efecto por razón del endoso condicional puesto en los mismos.

Los hechos están expresados en la opinión.

Abogados de los apelados: *Sres. Carlos Franco Soto* y *Juan B. Soto.*

Abogado de Aboy, Giorgetti & Co., Ltd.: *Sr. Herminio Díaz Navarro.*

EL JUEZ ASOCIADO SR. DEL TORO, emitió la opinión del tribunal.

Jorge Silva, José Tomás Silva y la Sociedad Agrícola Plamicrondes entablaron demanda de desahucio en la Corte

de Distrito de Aguadilla contra Aboy, Giorgetti y Compañía, Limited, y la Plata Sugar Company, basada en la falta de pago del canon de arrendamiento de ciertas fincas rústicas, canon que debía satisfacerse por semestres vencidos. Los demandados fueron emplazados y celebrada la vista del pleito en su oportunidad, la corte de distrito dictó sentencia el 2 de diciembre de 1913 ordenando el desahucio solicitado.

Los demandados Aboy, Giorgetti y Cía., Limited, apelaron de dicha sentencia para ante esta Corte Suprema el 3 de diciembre de 1913 y el 8 del propio mes consignaron por medio de su abogado en la secretaría de la corte de distrito, un cheque número 2901 contra The Bank of Nova Scotia, de San Juan, por $1,875; otro número 2123 contra el mismo banco, por $219; otro número 93365 contra el Banco Territorial y Agrícola de San Juan, por $800, y otro número 166 contra el American Colonial Bank por $856, formando en junto un total de $3,750, importe del canon del arrendamiento vencido el 6 de septiembre de 1913. Los tres primeros cheques tienen nota de haber sido "aceptados" y el último de haber sido "certificado" por los bancos respectivos que según se expresa en los mismos cheques son depositarios de fondos del Tesoro Público, y todos contienen el siguiente endoso: "Páguese a la orden de Don Jorge Silva Sapia, Don Tomás Silva y Rodríguez y la Sociedad Agrícola Plamicrondes, en calidad de depósito a su favor cuando se resuelva con carácter definitivo la apelación que hemos interpuesto en el caso que nos siguen en desahucio en la Corte de Distrito de Aguadilla."

Así las cosas, la parte demandante y apelada presentó una moción a esta Corte Suprema solicitando la desestimación del recurso por no haberse cumplido por la parte apelante con lo prescrito en la sección 12 de la Ley de Desahucio. Dicha moción fué argumentada ampliamente por los abogados de ambas partes en corte abierta.

La ley invocada por los apelados es como sigue:

"Sección 12.—No se admitirá al demandado el recurso de apelación si no consigna en secretaría el importe del precio adeudado hasta la fecha de la sentencia, cuando el desahucio se funde en falta de pago de las cantidades convenidas.

"En cualquier otro caso será requisito indispensable para ejercitar al recurso de apelación por parte del demandado, que éste otorgue fianza, a satisfacción del tribunal, para responder de los daños y perjuicios que puedan irrogarse al demandante.

"Tanto la consignación como la fianza de que habla la presente sección deberán quedar formalizadas dentro del término concedido para la apelación." Leyes de 1905, pág. 289.

Los apelados sostienen:

(*a*) que la consignación se hizo fuera del término concedido por la ley;

(*b*) que no se consignó toda la cantidad adeudada, y,

(*c*) que los cheques depositados en secretaría no constituyen la consignación que ordena la ley y que el endoso que dichos cheques contienen está redactado en forma ilegal.

Examinemos la primera cuestión. La sentencia se dictó y registró el 2 de diciembre de 1913 y los cheques se depositaron el 8 del propio mes. El término para apelar y consignar, cinco días, vencía el 7 de diciembre de 1913, pero como el dicho día 7 era domingo, de acuerdo con la ley quedó extendido hasta el 8. La primera cuestión debe, pues, resolverse en contra de los apelados.

Veamos la segunda. Hemos anotado en los comienzos de esta opinión que el canon de arrendamiento de que se trata debía satisfacerse por semestres vencidos. El último semestre se venció el 6 de septiembre de 1913. La sentencia se dictó el 2 de diciembre de 1913 y los apelados sostienen que la consignación no debe limitarse al semestre vencido sino que debe comprender todo lo que se adeudaba hasta la exacta fecha de la sentencia. Esta misma cuestión fué resuelta por esta Corte Suprema en el caso de *Más et al.* v. *Borinquen Sugar Company,* 17 D. P. R., 958, 960, en el sentido de que es suficiente la consignación de lo que realmente se adeude a la fecha de la sentencia de acuerdo con los términos del contrato. El

semestre vencido el 6 de septiembre de 1913 era todo lo que se adeudaba en este caso a la fecha de la sentencia de acuerdo con los términos del contrato por ésta reconocido, y la consignación de su importe era bastante para cumplir con lo exigido por la ley.

Estudiemos, por último, la tercera de las cuestiones suscitadas.

La ley ordena que en un caso como el presente en que el desahucio se funda en falta de pago, se consigne en secretaría el "importe del precio adeudado."

El propósito que informa la ley sobre la materia, es el de garantizar los intereses del demandante impidiendo que el demandado pueda a virtud de la apelación prolongar el tiempo del disfrute de la finca sin pagar el precio estipulado, debiendo dicho precio depositarse en forma tal que, en su caso, esté inmediatamente a la disposición del demandante.

Si la sentencia apelada es justa, la del apelante es una deuda de dinero que debe satisfacerse, de acuerdo con el artículo 1138 del Código Civil Revisado, en la especie pactada, y no siendo posible entregar la especie, en la moneda de plata u oro que tenga curso legal en Puerto Rico.

La consignación debió, pues, haberse hecho en la Secretaría de la Corte de Distrito de Aguadilla en la especie pactada, o en moneda de plata u oro de curso legal en esta Isla, o en billetes del Tesoro de conformidad con lo dispuesto en la sección 2588 de los Estatutos Revisados de los Estados Unidos.

El artículo 1138 del Código Civil Revisado prescribe también que el pago podrá verificarse por medio de pagarés a la orden, letras de cambio u otros documentos mercantiles, pero dispone que en tales casos sólo producirá el pago sus efectos cuando los documentos hubiesen sido realizados o cuando por culpa del acreedor se hubiesen perjudicado.

En el presente caso se trata de cheques librados contra bancos depositarios de fondos públicos y aceptados por dichos bancos.

El cheque es un efecto de comercio de creación moderna
que se importó en España de Inglaterra y se reguló en el Có-
digo de Comercio de 1885.

En la exposición de motivos de dicho código, se consigna
que "dos son los fines económicos que principalmente se con-
siguen con el uso de los cheques en las naciones donde son
conocidos, particularmente en Inglaterra y en los Estados
Unidos de América; primero, poner en circulación el numera-
rio metálico o fiduciario que, pendiente de inversión conser-
van los particulares improductivo en sus cajas, con ventajas
para éstos y para la riqueza general del país; segundo, dismi-
nuir el trasiego de la moneda metálica o fiduciaria, dentro de
la misma población y de una plaza a otra, ya haciendo las veces
de billete de banco, ya facilitando la liquidación de deudas
y créditos ciertos y efectivos que tengan entre sí varios comer-
ciantes y banqueros, compensándose mutuamente los cheques
que se hallan expedidos a favor de uno con los que resulten
girados contra el mismo, por la mediación de ciertas oficinas o
establecimientos creados al efecto."

"Mas el logro de cualquiera de estos dos fines supone nece-
sariamente la existencia de cantidades en metálico o valores
realizados en poder de la persona contra quien se libra el
cheque. Por eso la nota fundamental y característica de este
instrumento consiste en la previa provisión de fondos de la
pertenencia real y efectiva del librador en poder del librado,
en virtud de la cual puede aquél disponer del todo o parte de
los mismos en favor de persona determinada o del simple por-
tador del documento. Y en esto también se diferencia el
cheque de la letra de cambio y aun de la libranza; las cuales
no requieren la previa provisión en el momento de su expe-
dición, bastando que se verifique más tarde, antes o después
de la aceptación o pago." Véase el Código de Comercio por
Romero Girón, págs. 372 y 373.

El mandato de pago, conocido en el comercio con el nom-
bre de cheque, es un documento que permite al librador reti-
rar, en su provecho o en el de un tercero, todos o parte de

los fondos que tiene disponibles en poder del librado.    Art.
534 del Código de Comercio.

Nada dispone el legislador español al tratar de los cheques, sobre su aceptación.    Según el Código de Comercio, los cheques deben pagarse a su presentación y el portador debe presentarlos para su cobro dentro de los cinco días de su creación si estuvieren librados en la misma plaza y de los ocho si fueren en otra diferente, y si el portador dejare pasar ese término, perderá su acción contra los endosantes y también la perderá contra el librador si la provisión de fondos hecha en poder del librado desapareciere porque éste suspendiera los pagos o quebrare.

Si examinamos el endoso de los cheques de que se trata en este caso a la luz de lo dispuesto en el Código de Comercio, tendremos que concluir que no está conforme con la naturaleza del documento.    Los cheques se expidieron el 6 de diciembre de 1913 y de acuerdo con la ley debían presentarse para su cobro a lo sumo dentro del término de ocho días.    Sin embargo, el endoso expresa que los cheques se entregan al secretario en calidad de depósito y que deben pagarse a los demandantes cuando se resuelva esta apelación con carácter definitivo.

Expuesto lo que antecede, examinaremos los cheques y sus endosos a la luz de la jurisprudencia americana y de las prácticas actuales del comercio en Puerto Rico.

"Un cheque," dice Cyc., resumiendo la jurisprudencia, "es un libramiento u orden contra un banco o institución bancaria para que en todo caso se pague cierta suma de dinero a determinada persona que en el mismo se especifica, o al que lo expide, a su orden o al portador, con cargo a fondos en depósito, el cual se pagará tan pronto como se solicite su pago.    Un cheque se puede negociar según el derecho mercantil y es, esencialmente, una letra de cambio doméstica expedida contra un banquero, pagadera al exigirse el pago de la misma.    Sin embargo, el cheque puede ser pagadero en una fecha posterior sin que por ello deje de ser un cheque.    Por lo general no

expresa fecha o lugar de pago ni se presenta para su aceptación.'' 7 Cyc., 529–530–531.

''Se ha dicho que un cheque se diferencia de las demás letras y órdenes por el contrato tácito que tiéne el banco como librado de honrar los cheques del depositante. De conformidàd con este parecer se ha resuelto en algunos Estados que un cheque es un traspaso de los fondos que tiene el librador en el banco por la suma que en él se especifica y que la persona a quien el pago deba hacerse o subsiguiente tenedor podrá demandar al depositario por virtud del cheque sin que medie aceptación o certificación. También se ha declarado que el librador podrá demandar al librado en beneficio de los tenedores de sus cheques pendientes de pago. Sin embargo, en casi todos los Estados Unidos y en Inglaterra se ha resuelto que un cheque no es un traspaso de ninguna parte de los fondos en depósito; que podrá anularse hasta que sea aceptado o pagado y no puede considerarse como una deuda vencida entre el depositario y el tenedor de modo que pueda servir al tenedor como contra reclamación a un depositario insolvente; y que el tenedor no podrá demandar al banco por virtud de un cheque que no ha sido aceptado.'' 7 Cyc., 650–651–652.

Según las prácticas actuales de nuestro comercio, los cheques se aceptan o certifican por los bancos contra los cuales se libran, y entonces el verdadero deudor es el librado o sea el banco, representando el cheque una cantidad depositada en el banco a favor de la persona a quien debà de pagarse el cheque.

A este respecto la jurisprudencia, resumida también por Cyc., es como sigue: ''Cuando un cheque es pagadero a su presentación a menudo se considera su certificación en lo que respecta al librador como un pago del cual queda relevado. Esto sucede así cuando el tenedor solicita la certificación después que ha sido entregado el cheque. El librador no que-

dará por el contrario exento de responsabilidad por una certificación que él mismo haya pedido." 7 Cyc., 644. "El librador puede dar contraorden o anular un cheque hasta tanto
que no sea pagado, certificado o traspasado a un portador
de buena fe; pero no podrá darse contraorden una vez que el
cheque ha sido aceptado o después que ha sido traspasado
legalmente en el curso de los negocios a un portador de buena
fe por valor." 7 Cyc., 647–648.

Ahora bien, dando toda su fuerza y valor a los cheques
de que se trata en este caso, reconociendo que habiendo sido
aceptados por los bancos contra los cuales se libraron representan la suma debida por los apelantes a los apelados, depositada en los expresados bancos, y que habiendo sido solicitada la aceptación por los apelantes, además de los bancos
continúan siendo los dichos apelantes responsables del valor
de los cheques, aun así, es necesario reconocer que no constituyen la "consignación del precio adeudado" que exige la ley,
de acuerdo con el Código Civil, artículo 1138, porque dichos
cheques no han sido realizados, ni aceptados por el acreedor,
han quedado perjudicados por su culpa; y de acuerdo con el
derecho americano, porque "aunque es un hecho que los cheques certificados pasan de mano en mano como dinero efectivo
(*cash*), es lo cierto que no son dinero efectivo o moneda, en
el sentido legal de estos términos." *Bickford* v. *First National Bank,* 42 Ill., 238; 89 Am. Dec., 440.

Pero hay más. Aun cuando pudiera concluirse—que no
puede—que cheques aceptados por bancos de reconocida solvencia surtían el efecto de una verdadera consignación en
casos de esta naturaleza, aun así en este caso concreto, no podría dárseles tal efecto debido a los términos en que aparecen
redactados los endosos. El precio debe consignarse de modo
que pueda percibirse por su dueño sin dificultad alguna. Las
palabras "cuando se resuelva con carácter definitivo la apelación," etc., usadas en los endosos, constituyen una condición

cuyo cumplimiento puede ser origen de interpretaciones varias y motivo bastante para convertir tal vez en litigioso un derecho que debe ser perfectamente claro.

El caso de *Veve et al.* v. *Fajardo Sugar Growers' Association*, 18 D. P. R., 282, 292, invocado por los apelantes, no sostiene su contención.  En dicho caso no se resolvió que una consignación hecha en documentos de depósito, era por sí misma válida.  Al contrario, se dijo claramente que la parte a quien se intentó pagar con dichos documentos, no estaba en el deber de aceptarlos.  Fueron las circunstancias del caso las que dieron validez al acto.  Las palabras de esta corte, según aparecen en la opinión emitida por su Juez Presidente Sr. Hernández, son las que siguen: "Con arreglo a los preceptos legales transcritos las demandantes no estaban en la obligación de aceptar el pago del semestre de arrendamiento de julio a diciembre de 1910, recibiendo los documentos de depósitos enviados por la parte demandada; pero como ellas no rechazaron en absoluto tales documentos sino que los devolvieron por observar en los mismos notable error que debía ser rectificado, claro es que manifestaron su propósito de aceptarlos, siempre que se hiciera la rectificación."

Habiendo en consideración todo lo expuesto, la tercera de las cuestiones suscitadas por los apelados debe resolverse en su favor y en su consecuencia desestimarse la apelación interpuesta, por falta de cumplimiento de lo prescrito en la sección 12 de la ley de desahucio.

*Concedida la moción y desestimada la apelación.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf y Aldrey.